Approved: *Jason M. Swergold*
          JASON M. SWERGOLD / DANIELLE R. SASSOON / JUN XIANG /
          LAURA de OLIVEIRA
          Assistant United States Attorneys

Before:   THE HONORABLE PAUL E. DAVISON
          United States Magistrate Judge
          Southern District of New York

- - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA                    **COMPLAINT**

          - v. -                           Violations of 18 U.S.C.
                                            §§ 1343 and 2; 15 U.S.C.
MILETA MILJANIC,                            § 645

                    Defendant.              COUNTY OF OFFENSES:
                                            Westchester

- - - - - - - - - - - - - - - - X

SOUTHERN DISTRICT OF NEW YORK, ss.:

          William Dionne, being duly sworn, deposes and says that
he is a Task Force Officer with the Federal Bureau of Investigation
("FBI"), and charges as follows:

### COUNT ONE
### (Wire Fraud)

          1.   From at least in or about March 2020, up to at least in
or about May 2020, in the Southern District of New York and
elsewhere, MILETA MILJANIC, the defendant, knowingly and with the
intent to defraud, having devised and intending to devise a scheme
and artifice to defraud, and for obtaining money and property by
means of false and fraudulent pretenses, representations, and
promises, would and did transmit and cause to be transmitted by
means of wire, radio, and television communication in interstate
and foreign commerce writings, signs, signals, pictures, and
sounds for the purpose of executing such scheme and artifice, in
violation of Title 18, United States Code, Section 1343, to wit,
MILJANIC engaged in a scheme to obtain funds from the Small
Business Administration ("SBA") through the SBA's Economic Injury
Disaster Loan ("EIDL") Program, by means of false and fraudulent

pretenses, representations, and documents, including through electronic communications transmitted into and out of the Southern District of New York.

(Title 18, United States Code, Sections 1343 and 2.)

## COUNT TWO
### (False Statements to the SBA)

2.    From in or about March 2020, up to at least in or about May 2020, in the Southern District of New York and elsewhere, MILETA MILJANIC, the defendant, knowingly and willfully made a false statement, knowing such statement to be false, for the purpose of obtaining a loan, extension thereof by renewal, deferment of action and otherwise, and the acceptance, release and substitution of security therefor, for himself, and for the purpose of influencing in any way the action of the SBA, and for the purpose of obtaining money, property, or anything of value, under Chapter 14 of Title 15 of the United States Code, to wit, MILJANIC made false and misleading statements to the SBA regarding, among other things, gross revenues and expenses during the 12 months prior to the COVID-19 pandemic, for the purpose of obtaining funds through the EIDL Program administered by the SBA.

(Title 15, United States Code, Section 645(a) and Title 18, United States Code, Section 2.)

The bases for my knowledge and for the foregoing charges are, in part, as follows:

3.    I am a Task Force Officer ("TFO") with the FBI and a Detective with the New York City Police Department. I have been a detective for 15 years and a TFO with the FBI for 12 years. I am currently assigned to an FBI squad that investigates members and associates of organized crime. During the course of my career, I have participated in numerous criminal investigations, including investigations involving organized crime and various related fraudulent schemes.

4.    I have been personally involved in the investigation of this matter. This affidavit is based upon my personal participation in the investigation of this matter, my conversations with other law enforcement officers, and my examination of reports and records. Because this affidavit is being submitted for the limited purpose of establishing probable cause, it does not include all the facts that I have learned during the course of my participation in the investigation. Where the contents of documents and the actions, statements and

2

conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated.

## Overview of the Fraudulent Conduct

5.    In about March 2020, MILETA MILJANIC, the defendant, submitted and caused to be submitted an application for an SBA EIDL loan (the "EIDL Application") that contained misrepresentations about the revenues and expenses of MILJANIC's company, MDP Rebar Solutions LLC ("MDP Rebar"), resulting in approximately $154,900 being paid by the SBA.   In the EIDL Application, MILJANIC represented and caused to be represented to the SBA, among other things, that MDP Rebar engaged in lawful business and had specified gross revenues and expenses during the year prior to the COVID-19 pandemic.   In fact, as described below, MDP Rebar does not appear to engage in any lawful activity and is instead a shell company through which millions of dollars are passed to members and associates of organized crime.

## Background on the SBA's EIDL Program

6.    Based on my involvement in this investigation, including my review of publicly available information disseminated by the SBA, I am aware of the following, in substance and in part:

a.    The SBA is a federal agency of the Executive Branch that administers assistance to American small businesses. This assistance includes making direct loans to applicants through the EIDL Program.

b.    The Coronavirus Aid, Relief, and Economic Security ("CARES") Act is a federal law enacted on March 29, 2020, designed to provide emergency financial assistance to the millions of Americans who are suffering the economic effects caused by the COVID-19 pandemic.  Among other things, the CARES Act expanded the SBA's EIDL Program, which provided small businesses with low-interest loans of up to $2 million prior to in or about May 2020 and up to $150,000 beginning in or about May 2020, in order to provide vital economic support to help overcome the loss of revenue small businesses are experiencing due to COVID-19.   To qualify for an EIDL under the CARES Act, an applicant must have suffered "substantial economic injury" from COVID-19, based on a company's actual economic injury determined by the SBA.   EIDLs may be used for payroll and other costs as well as to cover increased costs due to supply chain interruption, to pay obligations that cannot be met due to revenue loss, and for other similar uses.

c.   The CARES Act also permitted applicants seeking a loan under the EIDL program to request and receive an advance of approximately $1,000 per employee, for an amount up to $10,000, which the SBA has generally provided while the loan application was pending.  The advance was effectively a grant, as applicants were not required to repay any of the advanced amount.  In many cases, the SBA provided advances in connection with applications that the SBA later determined were ineligible for a loan.

d.   To qualify for an EIDL, applicants are required to submit applications to the SBA, generally through the SBA's website, wherein the applicant provides information including the business's:  name, EIN (or social security number for sole proprietorships), gross revenues and cost of goods for the prior year, address, email, date of establishment, number of employees as of January 31, 2020, and bank account information.  The EIDL application also states that "If anyone assisted you in completing this application, whether you pay a fee for this service or not, that person must enter their information below," and includes fields for the name and contact information of anyone assisting the applicant to complete the application.  Applicants are required to certify under penalty of perjury that the information provided in the EIDL application is true and correct.

<u>Overview of La Cosa Nostra</u>

7.   Based on my training and experience, including my participation in dozens of investigations into organized crime, I know that La Cosa Nostra ("LCN") is a nationwide criminal society, which operates through local organizations known as "Families." In the New York City area, the most prominent (and most powerful) LCN Families are the "Five New York Families":  the Genovese, Gambino, Colombo, Luchese, and Bonanno Families.  LCN Families such as the Gambino Family operate through a strict hierarchical structure.  In descending order of power, the following positions exist within each LCN Family: "Boss," "Underboss," "Consigliere," "Capo," and "soldier."  In addition, each LCN Family has trusted "associates" who are themselves not inducted members of LCN.

<u>Overview of MILJANIC and His Company</u>

8.   Based on my participation in this investigation, including my review of publicly available information, bank records, communications intercepted pursuant to judicially-authorized wiretap orders, and my training and experience, I am aware of the following, among other things:

4

a.   MILETA MILJANIC, the defendant, is believed to be a high-ranking Serbian organized crime member with close ties to the Gambino Crime Family of LCN.[1]   MILJANIC was previously convicted in or about 1984 in the United States District Court for the Eastern District of New York of wire fraud and sentenced to three years' imprisonment.   MILJANIC is also currently pending sentencing in that district after having pled guilty in December 2021 to illegally possessing a firearm, which was found in his home during the execution of a search warrant in February 2021. In addition, MILJANIC was convicted of cocaine distribution in Italy in 2012 and sentenced to six years' imprisonment, but in or about May 2014, he was granted work release and, less than three months later, he absconded from the work-release program and fled to the United States.

b.   MILJANIC controls a company called MDP Rebar that purports to operate in the rebar business.   Rebar is a steel bar used in the concrete construction business.

c.   MDP Rebar is a New York corporation that was formed on or about 2016, with an individual I know to be one of MILJANIC's sons ("Son-1") listed as the sole owner.   Although Son-1 is listed as the owner of MDP Rebar, MILJANIC controls the company.   For example:

i.   On his 2018 and 2019 United States income tax returns, MILJANIC listed himself as the sole proprietor of MDP Rebar.

ii.   In or about March 2019, MILJANIC opened a bank account (the "MDP Bank-1 Account") at a particular financial institution ("Bank-1") in the name of MDP Rebar.   The account agreement, signed by MILJANC, listed MILJANIC as the manager of MDP Rebar.

iii. On or about April 29, 2020, at approximately 12:33 pm, a representative from Bank-1 called MILJANIC at a phone

---

[1] Serbian organized crime members have long been closely aligned with members of the Gambino Crime Family.   For example, in or about 1987, a Serbian Gambino Family Associate helped bribe a juror that resulted in the acquittal of then-Gambino Family boss John Gotti.

number ending in 1812 (the "1812 Number").[2] During the conversation, MILJANIC, in substance and in part, confirmed that Son-1 was the "technical owner" of MDP Rebar, but that MILJANIC did "everything" for the company and that Son-1 was just learning the business.

d.    Based on records obtained from a payroll company that provided payroll services for MDP Rebar, from in or about the second quarter of 2018 to in or about the second quarter of 2021, MDP Rebar purportedly employed only MILJANIC, members of MILJANIC's family, and an individual ("Individual-1"), who, as discussed in more detail below, is believed to be the Consigliere of the Gambino Crime Family.

## The EIDL Application and Loan

9.    Based on my participation in this investigation, including my review of records from the SBA, bank records, the contents of cellphones obtained pursuant to judicially authorized search warrants, and communications intercepted pursuant to judicially-authorized wiretap orders, I know the following, among other things:

a.    On or about March 30, 2020, MILJANIC sent a text message to an individual ("Individual-2") and stated "Hi [Individual-2], I just send you an email please try to help me To fill this out I am looking for the Government lawn [sic]. Thanks."

b.    On or about March 31, 2020, MDP Rebar submitted the EIDL Application to the SBA for an EIDL loan, which was assigned to the SBA's Birmingham, Alabama, servicing office.  The EIDL Application was submitted electronically by Individual-2, who was located in Westchester County, New York, and who then emailed MILJANIC a confirmation of the application submission.

c.    Approximately 22 minutes before submitting the EIDL Application, Individual-2 emailed MILJANIC a copy of the application and wrote "[p]lease see attachment and see if this is ok for you before i submit it."

d.    The EIDL Application listed MILJANIC as the CEO and 100% owner of MDP Rebar.  It also listed MILJANIC as the company's primary contact, the 1812 Number as the company's business phone,

---

[2] I know that MILJANIC is the user of the 1812 Number based on my review of communications intercepted during a judicially-authorized wiretap of the 1812 Number.

and represented that the applicant was not engaged in any illegal activity.

e. The EIDL Application contained information about MDP Rebar's financial status, including that the company made approximately $2.554 million in revenue in the 12 months prior to January 31, 2020 and had approximately $2.557 million in expenses during the same time period.

f. The EIDL Application also indicated that the company wished to receive an advance of up to $10,000.

g. On or about April 22, 2020, MDP Rebar received a $5,000 advance loan from the SBA, which was deposited in the MDP Bank-1 Account.

h. On or about May 21, 2020, MILJANIC signed the Loan Authorization and Agreement (the "Loan Agreement") with the SBA for the EIDL loan in the amount of $150,000. By signing the Loan Agreement, MILJANIC certified the following, among other things:

i. Borrower will use all the proceeds of this Loan solely as working capital to alleviate economic injury caused by disaster occurring in the month of January 31, 2020 and continuing thereafter; and

ii. All representations in the Borrower's Loan application (including all supplementary submissions) are true, correct and complete and are offered to induce SBA to make this Loan.

i. On or about May 27, 2020, MDP Rebar received an EIDL loan in the amount of $149,900, which was deposited in the MDP Bank-1 Account.

## MILJANIC's False Statements in the EIDL Application

10. As set forth in more detail below, although MDP Rebar represented in the EIDL Application that it was a legitimate business with over $2 million in revenues and over $2 million in expenses, MDP Rebar does not appear to engage in any legitimate business and instead appears to be a shell company through which millions of dollars are funneled to MILETA MILJANIC, the defendant, members of his family, and members and associates of organized crime. Based on my review of bank records, judicially-authorized wiretapped communications, and business records, as well as my participation in this investigation and conversations with other

law enforcement officers, I have learned the following, among other things:

*MDP Rebar Activity Between December 2018 and May 2021*

a.   From in or about December 2018 to in or about May 2021, MDP Rebar maintained bank accounts (the "MDP Rebar Accounts") at three different financial institutions, including the MDP Bank-1 Account.   During that time, the MDP Rebar Accounts received approximately $6,800,000.   Of that total number, approximately 84% of the money (approximately $5,700,000) came from a construction company owned and operated by a person believed to be an associate of the Gambino Crime Family ("Company-1"), approximately 12% (approximately $810,000) came from MILJANIC or members of his family, and approximately 3% (approximately $202,000) came from SBA funds.[3]

b.   Based on my review of the MDP Rebar Accounts, MDP Rebar does not appear to have paid any expenses that would ordinarily be associated with a rebar company.   Instead, the money received into the MDP Rebar Accounts was disbursed to MILJANIC, his family, and members and associates of LCN.   In particular:

i.   Approximately $1.7 million was disbursed to bank accounts associated with MILJANIC and his family members.

ii.   Approximately $1.5 million was disbursed to the bank accounts for two construction management companies controlled by an individual ("Individual-3") who, based on my training and experience, I know to be a Capo in the Gambino Crime Family. In particular, I know that in or about 2006, Individual-3 was convicted in the United States District Court for the Southern District of New York of racketeering and extortion and sentenced to 46 months' imprisonment, and in or about 2008, Individual-3 was convicted in the United States District Court for the Eastern District of New York of extortion and sentenced to an additional five months' imprisonment.

iii. Approximately $10,000 was disbursed to a company controlled by Individual-3's girlfriend.

iv.   Approximately $925,000 was disbursed to a company owned by an individual ("Individual-4") who, based on my

---

[3] The remaining 1% came from various miscellaneous sources, including ATM deposits.

training and experience, I know to be an associate of the Gambino Crime Family. In particular, I know that in or about January 2021, Individual-4 was convicted in the United States District Court for the Eastern District of New York of conspiracy to commit wire fraud in connection with his participation in a number of criminal schemes committed on behalf of the Gambino Crime Family, for which he was sentenced to nine months' imprisonment.

v.   Approximately $484,000 was disbursed to a company owned by the son of an individual ("Individual-5"), who, based on my training and experience, I know to be a soldier in the Gambino Crime Family. In particular, I know that in or about December 1996, Individual-5 was convicted in the United States District Court for the Southern District of New York of racketeering, which was in connection with his participation in a murder, and sentenced to 176 months' imprisonment.

vi.   Approximately $233,000 was disbursed to an individual ("Individual-6") who purported to work as an independent contractor for MDP Rebar, but who also drew a salary from Company-1.

vii. Approximately $90,000 was disbursed to a contracting company owned by an individual ("Individual-7") who, based on my training and experience, I know to be a Capo in the Gambino Crime Family. In particular, I know that on or about January 2021, Individual-7 was convicted in the United States District Court for the Eastern District of New York of racketeering conspiracy, and sentenced to 37 months' imprisonment, and in or about March 2005, Individual-7 was convicted in the United States District Court for the Eastern District of New York of wire fraud conspiracy and sentenced to 21 months' imprisonment.

viii.   Approximately $70,000 was disbursed to Individual-1.

c.   In addition to the disbursements described above, the MDP Rebar Accounts also disbursed during this time period approximately $961,000 in purported payroll to MILJANIC, his family members, and Individual-1. Of that total amount, Individual-1 received approximately $569,500 (apart from the $70,000 he also received), MILJANIC received approximately $197,000, and MILJANIC's four family members (his wife, daughter, and two sons) combined received the remainder.

_MDP Rebar Activity Between February 1, 2019 and January 31, 2020_

      d.   As discussed above, the EIDL Application stated that in the 12-month period prior to January 31, 2020, MDP Rebar had approximately $2.557 million in expenses. However, there is probable cause to believe that information is false for the following reasons:

      i.   First, MILJANIC has falsely labeled personal withdrawals as "expenses" in order to avoid paying taxes on the money that MDP Rebar was receiving from Company-1. On or about June 19, 2020, MILJANIC spoke with Individual-2 by phone, during which Individual-2 told MILJANIC, in sum and substance, that MDP Rebar's accountant "wants to see the general ledger for materials and trucks and stuff" and that Individual-2 put the withdrawals "in for the materials and stuff to make it look like you have losses," to which MILJANIC told Individual-2 to "do what you gotta do." In addition, on or about February 25, 2020, during a wiretapped call, MILJANIC told Individual-2, in sum and substance, that he gave Individual-1 a $20,000 bonus and asked if it needed to be reflected in a 1099, to which Individual-2 responded that it did not need to be because they could "put it against the materials."[4]

      ii.   Second, I have reviewed an analysis of MDP Rebar's bank records and the company's general ledger. During the 2019 calendar year, the general ledger lists 104 payments for "supplies and materials" or "equipment rentals" totaling approximately $886,000, made to several different purported supply companies. However, consistent with the conversation discussed above between MILJANIC and Individual-2, the MDP Rebar bank records show that no payments were made during that time to any of these supply companies, and instead, the payments were used for personal expenses and transfers of money to personal accounts. For example:

      iii. The general ledger reflects a February 7, 2019 check to "G&M Building Supply" in the amount of $50,000, but the bank records show that the payment was instead a transfer to a personal account held by MILJANIC and his wife.

---

[4] Ultimately, because MILJANIC learned that Individual-1 paid taxes on the $20,000 bonus, MDP Rebar issued a 1099 to Individual-1 for the payment. However, the check number for the payment was later re-used in the general ledger to show a purported payment to a supply company.

iv.   The general ledger reflects a February 27, 2019 check to "Triboro Contractors Supply" in the amount of $30,000, but the bank records show that the payment was instead a transfer to a personal account held by MILJANIC and his wife.

v.   The general ledger reflects an April 4, 2019 check to "Manhattan Equipment Rental" in the amount of $36,500, but the bank records contain no record of such a check being issued from MDP Rebar's accounts.

vi.   The general ledger reflects an October 2, 2019 check to "Manhattan Equipment Rental" in the amount of $40,000, but the bank records show that the payment was instead a transfer to MILJANIC's personal bank account.[5]

vii. The general ledger reflects 29 different payments to suppliers including the Home Depot, "Marjam Supply," and "Dina Lumber and Building," but the bank records show that all of these payments were instead to pay off American Express bills totaling approximately $85,900.

viii.   Third, approximately $400,000 was spent on "payroll" during this time period, but as discussed above, MDP Rebar does not appear to have any employees except for MILJANIC, his family, and Individual-1, and the company does not appear to be performing any legitimate work.

11.   Based on the foregoing, I submit there is probable cause to believe that MDP Rebar is a shell company through which millions of dollars are funneled to members and associates of organized crime, and that MILETA MILJANIC, the defendant, made and caused to be made false statements regarding the nature of MDP Rebar and its revenues and expenses in order to fraudulently obtain an EIDL loan from the SBA.

---

[5] The memo on the check states "reimbursement for materials," but I respectfully submit that MILJANIC is creating a cover for this payment because, as discussed herein, MILJANIC and Individual-2 hid personal withdrawals by falsely labeling them as expenses for things like materials.

WHEREFORE, deponent respectfully requests that an arrest warrant be issued for MILETA MILJANIC, the defendant, and that he be imprisoned or bailed, as the case may be.

_____

William Dionne
Task Force Officer
Federal Bureau of Investigation

Sworn to before me this
4th day of May, 2022

_____

THE HONORABLE PAUL E. DAVISON
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF NEW YORK

12